Filed 5/12/22  P. v. Bracy CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093998 |
| Plaintiff and Respondent, | (Super. Ct. No. 95F10098) |
| v. | |
| TRISTAN LAWRENCE BRACY, | |
| Defendant and Appellant. | |

In 1996, a jury found defendant Tristan Lawrence Bracy guilty of first degree murder and found true the special circumstance allegation the murder was committed during the commission or attempted commission of rape.  Defendant appeals the denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1]  He argues the trial court erred in dismissing his petition without issuing an order to show cause.  We shall affirm.

---

[1] This case was fully briefed and assigned to this panel on February 14, 2022.

1

# FACTUAL AND PROCEDURAL BACKGROUND

We take the basic facts of this case from our opinion in defendant's original appeal.  (*People v. Drayton et al.* (Jan. 5, 1998, C023966) [nonpub. opn.] (*Drayton*).)[2]

"On September 27, 1995, Caecile Lenker, a homeless woman, went to a transient encampment along the American River where she drank and talked with [codefendant Robert Anthony] Drayton and Jonathan and Veda Britton.  As the Brittons were leaving, [defendant] arrived with Charlie Hisaw and George Hooulu.

"[Lenker], who had been kissing Drayton, turned her attention to [defendant] and they entered a nearby lean-to.  A short time later, [Lenker] began yelling, 'No, please don't,' and sometime thereafter [Lenker] and [defendant] came out of the lean-to straightening their clothing.  Hisaw asked [defendant] what happened, and [defendant] responded, 'We did it.'  [Defendant] stated he raped [Lenker] and told the others to 'get rid of her' because he wasn't going to jail for it.

"[Lenker] had walked about six feet from the lean-to when Drayton grabbed her and threw her down an embankment, where she fell approximately 15 feet to·some rocks below.  Drayton and Hisaw threw rocks at her.  [Lenker] entered the river and swam to the other side.  After unsuccessfully attempting to retrieve [Lenker]'s purse, which floated away, Drayton ran to the other side of the levee, and as [Lenker] got out of the water, he started throwing rocks at her.  [Lenker] crawled back to the river.  Drayton caught her and held her head under the water, then dragged her to the beach, removed her clothing, and dropped a huge rock on her face.  Drayton removed [Lenker]'s watch and rings, breaking one of her fingers as he did so.  Drayton then dragged [Lenker] back to the river, and after again holding her head underwater, let her go and she floated down the river.  At [defendant's] direction, the men threw [Lenker]'s clothes in the river.

---

[2] We take judicial notice of this prior opinion on our own motion.  (Evid. Code, § 452, subd. (d).)

"The day after [Lenker]'s murder, [defendant] analogized his role in the killing to 'a general commanding his troops,' and declared, 'We killed the bitch.'

"The coroner testified [Lenker] died from drowning. Drayton did not present a defense; [defendant] offered witnesses who testified to his nonviolent character." (*Drayton, supra*, C023966 [pp. 2-3], fns. omitted.)

The jury found defendant guilty of first degree murder and attempted rape. (Pen. Code, §§ 187, subd. (a), 664, 261, subd. (a)(2).)[3] It also found true the special circumstance allegation that the murder was committed during the commission or attempted commission of rape. (§ 190.2, subd. (a)(17)(C).) The trial court sentenced defendant to life without the possibility of parole.

We affirmed the conviction on direct appeal. (*Drayton, supra*, C023966.) As relevant here, we concluded substantial evidence supported the attempted rape conviction. We also concluded substantial evidence supported defendant's conviction for first degree murder both under the felony-murder rule and as an aider and abettor who ordered the killing. We further concluded substantial evidence supported the special circumstance finding. Lastly, we concluded the trial court did not err when it failed to give the jury CALJIC No. 8.80.1 which states, in relevant part: "[If you find that a defendant was not the actual killer of a human being, [or if you are unable to decide whether the defendant was the actual killer or [an aider and abettor] [or] [co-conspirator],] you cannot find the special circumstance to be true [as to that defendant] unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] any actor in the commission of the murder in the first degree] [.] [, or with reckless indifference to human life and as a major participant, [aided,] [abetted,] [counseled,] [commanded,] [induced,] [solicited,] [requested,] [or] [assisted] in the

---

[3] Unspecified statutory references are to the Penal Code.

commission of the crime of _____ (Penal Code, § 190.2[, subd.] (a)(17) crime) which resulted in the death of a human being, namely _____.]" Instead, in light of the substantial evidence that defendant had the intent to kill Lenker when he ordered her murder, we concluded the trial court properly instructed the jury: " 'If you find beyond a reasonable doubt that the defendant was an aider or abettor, then you must also find beyond a reasonable doubt that the defendant with intent to kill, aided and abetted an actor in the commission of the murder in the first degree, in order to find the special circumstance to be true.' " (*Drayton, supra*, C023966 [p. 17].)

In 2020, defendant filed a petition under section 1170.95 to have his murder conviction vacated and to be resentenced. Defendant's section 1170.95 petition declared he met the requirements for relief, specifically, that (1) the complaint, information, or indictment filed against him allowed the prosecution to proceed under a theory of felony murder or the natural and probable consequences doctrine; (2) he was convicted of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of changes to sections 188 and 189, effective January 1, 2019. Defendant checked the boxes he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; and he was not a major participant in the felony or did not act with reckless indifference to human life. The trial court appointed counsel for defendant and the prosecution submitted briefs opposing the petition.

The trial court issued a preliminary ruling indicating it believed defendant was not eligible for resentencing due to the jury's true special circumstance finding and our prior conclusion the jury found defendant had the intent to kill the victim. The trial court ordered further briefing on this point.

Defendant's counsel submitted a letter to the court stating he had reviewed our prior opinion, researched the law, and would not be filing any further briefing. After it

4

received this letter, the trial court denied the petition. The trial court noted the jury had not been instructed on the natural and probable consequences doctrine, but had been instructed on malice murder and felony murder. The trial court noted our opinion stated the evidence demonstrated defendant harbored and expressed an intent to kill Lenker when he directed the other men to kill her. As a result, the trial court found defendant failed to demonstrate a prima facie case that he could not now be convicted of murder.

## DISCUSSION

Defendant argues the trial court erred when it concluded defendant failed to establish a prima facie case he was entitled to relief. We disagree.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Effective January 1, 2019, the legislation amended sections 188 and 189 and added section 1170.95.

Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

5

Section 1170.95[4] allows those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner, to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of first degree or second degree murder following a trial . . . .  [¶]  (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a).)

Section 1170.95 includes a prima facie determination.  Under subdivision (c), the trial court must appoint the defendant counsel if requested, take briefing from the parties, and then determine whether "the petitioner makes a prima facie showing that he or she is entitled to relief."  (§ 1170.95, subd. (c).)  In performing this preliminary screening function, courts are not limited to the allegations of the petition; rather, they may "rely on the record of conviction in determining whether that single prima facie showing is made."  (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).)  Thus, if the record of conviction establishes the petition lacks merit, the trial court may deny the petition without conducting further proceedings.  (*Id.* at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

---

[4]  References in this opinion to section 1170.95 refer to the version in effect at the time the trial court ruled on the petition.  (Stats. 2018, ch. 1015, § 4.)  The Legislature further amended section 1170.95 effective January 1, 2022, under Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551).  This amendment to section 1170.95 has no impact on the issues raised by this appeal.

"[W]hen assessing the prima facie showing, the trial court should assume all facts stated in the section 1170.95 petition are true.  [Citation.]  The trial court should not evaluate the credibility of the petition's assertions, but it need not credit factual assertions that are untrue as a matter of law—for example, a petitioner's assertion that a particular conviction is eligible for relief where the crime is not listed in subdivision (a) of section 1170.95 as eligible for resentencing." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980, abrogated on other grounds in *Lewis, supra*, 11 Cal.5th at p. 963.)  The "authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, subd[ivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton*, at p. 980.)

A special circumstance finding under section 190.2, subdivision (a)(17) disqualifies a defendant from relief under section 1170.95.  "The requirements for the felony-murder special circumstance did not change as a part of Senate Bill No. 1437, and are identical to the new requirements for felony murder following the enactment of Senate Bill No. 1437.  In both instances, the defendant must have either actually killed the victim [citations]; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in the killing [citations]; or been a major participant in the underlying felony and acted with reckless indifference to human life [citations].  By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law.  Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1140-1141; see *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854;

7

*People v. Gomez* (2020) 52 Cal.App.5th 1, 15, review granted Oct. 14, 2020, S264033; *People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978; *People v. Allison* (2020) 55 Cal.App.5th 449, 457.)

We recognize some appellate courts have come to contrary conclusions and the issue is currently pending in our Supreme Court. (See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179, review granted June 24, 2020, S262011, abrogated on another ground by *Lewis, supra*, 11 Cal.5th at p. 963; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954; *People v. Harris* (2021) 60 Cal.App.5th 939, 957, review granted Apr. 28, 2021, S267802.) Defendant urges us to follow the *Torres* line of cases. Until we receive direction from the Supreme Court, we conclude the *Galvan* line of cases is more persuasive.

Here, the record of conviction establishes the jury found true the allegation defendant committed the murder during the commission or attempted commission of a rape. (§ 190.2, subd. (a)(17)(C).) On the special circumstance allegation, the trial court did not instruct the jury on aiding and abetting liability based on defendant being a major participant in the murder who acted with reckless indifference to human life. Rather, the trial court instructed the jury that to find the special circumstance allegation true, it had to find defendant had the intent to kill when he aided and abetted the principals in the commission of this murder. The jury so concluded. As reflected by our prior decision, substantial evidence supported the jury's finding defendant had the actual intent to kill when he ordered the murder. Based on this finding, defendant could still be found guilty of felony murder after Senate Bill No. 1437 and is ineligible for resentencing as a matter of law.

Defendant argues the jury's felony-murder special circumstance finding does not preclude him from eligibility for resentencing because it was made before our Supreme

8

Court clarified the meaning of a "major participant" and "reckless indifference to human life" in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. This argument has no application here. Defendant's conviction was based on the fact that he had the intent to kill Lenker when he ordered her murder. It was not based on the fact he was a major participant who acted with reckless indifference to human life. We reject this claim of error.

## DISPOSITION

The trial court's order is affirmed.

/s/<br>
EARL, J.

We concur:

/s/<br>
HOCH, Acting P. J.

/s/<br>
KRAUSE, J.